**PULLMAN INDUSTRIES, INC.,**
**Plaintiff–Appellant,**

v.

**MANUFACTURERS ENAMELING CORPORATION, Defendant–Appellee.**

No. 00–1432.

United States Court of Appeals, Sixth Circuit.

July 25, 2001.

Before NATHANIEL R. JONES, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.

PER CURIAM.

The plaintiff, Pullman Industries, Inc., filed a defamation action against defendant Manufacturers Enameling Corporation, based on federal diversity. Pullman Industries claimed that Manufacturers Enameling falsely accused it of wrongdoing in a cease-and-desist letter that Manufacturers Enameling sent to Miller Products, Inc. The district court held that the letter was non-defamatory as a matter of law, because it "neither states nor suggests, directly or indirectly, that plaintiff participated in the misappropriation of proprietary technology referenced in the letter." Pullman Industries now appeals the district court's grant of summary judgment to Manufacturers Enameling. We find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Pullman Industries, Inc., is a Michigan corporation that produces metal door tracks used for installation on Chrysler minivans. Manufacturers Enameling Corporation is an Ohio corporation principally engaged in coating metal parts. In 1994, Pullman Industries entered into an agreement with Manufacturers Enameling whereby Manufacturers Enameling would coat the Chrysler minivan door tracks for Pullman Industries. Purchase invoices

presumably indicated that hanging racks designed and used by Manufacturers Enameling to effect the agreement would remain the property of Pullman Industries.

Pullman Industries allegedly experienced problems with Manufacturer Enameling's coating, and it sent one of its representatives and an independent expert to Manufacturers Enameling's production areas to address the problems. Because the alleged problems continued, Pullman Industries entered into a contract with Miller Metal Products, Inc., to coat the door tracks. An executive at Manufacturers Enameling allegedly discovered from Pullman Industries employees that Miller Products "was using proprietary hanging rack technology developed by and belonging to Manufacturers Enameling" to coat Pullman Industries's door tracks, although the alleged employees deny informing the executive of such transgression.

Shortly thereafter, an attorney representing Manufacturers Enameling sent a "cease and desist" letter to Miller Products. The second paragraph of the letter reads:

> As you know, Pullman Industries, Inc. has recently transferred the coating of Chrysler Minivan Center Tracks from Manufacturers Enameling to Miller Metal Products. Since the time of the transfer, it has come to the attention of my client that Miller Metal Products has misappropriated and is using proprietary hanging rack technology developed by Manufacturers Enameling to coat the Chrysler part. The technology in question was developed at great cost and expense to Manufacturers Enameling, and has great value to the company because of the efficiencies it permits.

The letter further outlines steps that Miller Products should take to rectify the alleged misappropriation.

A month later, the attorney for Manufacturers Enameling sent a letter to the president of Pullman Industries alleging that Pullman Industries had disclosed the hanging rack technology to Miller Products and demanding that Pullman Industries take certain steps to remedy the *disclosure*. In that same month, Pullman Industries filed a one-count complaint against Manufacturers Enameling in the district court averring solely a defamation claim based upon the letter sent by Manufacturers Enameling's attorney to Miller Products. In another action, Manufacturers Enameling sued Pullman Industries and several of their executives for misappropriation in an Ohio federal district court.

With respect to Pullman Industries's complaint, Manufacturers Enameling moved to dismiss the action under Fed. R.Civ.P. 12(b)(6), alleging that the Miller Products letter did not contain a reference to Pullman Industries. The motion, later converted to a motion for summary judgment, was granted by the district court, and this appeal followed.

## DISCUSSION

We review an order granting summary judgment *de novo*. *See Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir.1996). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its deter-

mination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■■ Under Michigan law, " '[t]o demonstrate liability for defamation, the following elements must be proved: (a) a false and defamatory statement *concerning plaintiff*; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation *per quod* ).' " *Curtis v. Evening News Association*, 135 Mich.App. 101, 352 N.W.2d 355, 356 (Mich.Ct.App. 1984) (quoting *Postill v. Booth Newspapers, Inc.*, 118 Mich.App. 608, 325 N.W.2d 511 (Mich.1982)) (emphasis in original). The primary dispute here is whether Manufacturers Enameling made 'a false and defamatory statement concerning' Pullman Industries. Pullman Industries claims that Manufacturers Enameling wrongly accused it of misappropriation in the Miller Products letter.

■ As cited above, the letter, on its face, makes no accusation of any kind against Pullman Industries. As a result, we must rely upon other factors to resolve the issue in the absence of a direct reference to Pullman Industries:

> When a publication, on its face, makes no reference to a plaintiff, plaintiff must sustain the burden of pleading and proof, by way of 'colloquium,' that the defamatory meaning attached to him.... Where a statement contains not even an oblique reference to the plaintiff as an individual, the plaintiff's witnesses must show a basis for the belief that plaintiff was being attacked.... Addi-

tionally, the plaintiff must establish some reasonable personal application of the words to himself. Beyond that, if the words have no personal application to the plaintiff, they are not actionable by him.... It remains a question for the court whether the meaning claimed might reasonably be conveyed, and for the jury whether it was so understood.

*Hodgins Kennels, Inc. v. Durbin*, 170 Mich.App. 474, 429 N.W.2d 189, 193 (Mich. Ct.App.1988) (citations omitted), *rev'd on other grounds by*, 432 Mich. 894, 438 N.W.2d 247 (Mich.1989). Section 564 of the Restatement (Second) of Torts offers some guidance in this consideration: "A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer." The commentary to § 564 elaborates further upon the reporters' directive:

> If the communication is reasonably understood by the person to whom it is made as intended to refer to the plaintiff, it is not decisive that the defamer did not intend to refer to him.... It is not enough however, that the defamatory matter is actually understood as intended to refer to the plaintiff; the interpretation must be reasonable in the light of all the circumstances. It is not necessary that the plaintiff be designated by name; it is enough that there is such a description of or reference to him that those who hear or read reasonably understand the plaintiff to be the person intended. Extrinsic facts may make it clear that a statement refers to a particular individual although the language used appears to defame nobody.... It is not necessary that everyone recognize the other as the person intended; it is enough that any recipient of the communication reasonably so understands it. However, the fact that only one person

believes that the plaintiff was referred to is an important factor in determining the reasonableness of his belief. If the applicability of the defamatory matter to the plaintiff depends upon extrinsic circumstances, it must appear that some person who saw or read it was familiar with the circumstances and reasonably believed that it referred to the plaintiff. Restatement (Second) of Torts § 564 cmt. b.

Application of the foregoing standards easily resolves the issue before us on appeal. The Miller Products letter does not evince an intention by Manufacturers Enameling to disparage Pullman Industries. The letter's only direct reference to Pullman Industries states simply that Pullman Industries transferred its coating business from Manufacturers Enameling to Miller Products. In no other fashion does Manufacturers Enameling mention Pullman Industries. There exists no express or implied statement or suggestion that any entity other than Miller Products misappropriated Manufacturers Enameling's technology. To the contrary, as reflected above, Manufacturers Enameling directly accused Pullman Industries of misappropriation in a subsequent letter dated a month after the Miller Products letter.

Pullman Industries urges the court to rely upon the affidavit of Daniel Gray, the Miller Products executive who originally read the letter from Manufacturers Enameling, in order to read into the letter an implication that the perpetrator of the misappropriation was in fact Pullman Industries. Gray testified that upon reading the letter, he "understood it to mean that Pullman Industries had misappropriated proprietary technology of Manufacturers Enameling and Miller had improperly obtained this information from Pullman." Gray stated that his "understanding" rested upon the following "factors":

(1) The letter stated that the coating of the Chrysler mini-van center tracks had been transferred by Pullman ... from Manufacturers Enameling ... to Miller;

(2) Neither Miller nor any of its employees had any contact with Manufacturers Enameling ... or access to any alleged proprietary information of Manufacturers Enameling ...;

(3) Only Pullman had contact with Manufacturers Enameling ... and with Miller;

(4) [T]he racks in question did not belong to Miller. The racks in which the alleged proprietary information had been incorporated were the sole property of Pullman. It was Pullman's racks that would contain any misappropriated technology.

(5) Miller had not misappropriated any "proprietary hanging rack technology."

Pullman Industries argues that Gray possessed a reasonable belief, based upon the testimony in his affidavit, that Manufacturers Enameling had accused Pullman Industries of misappropriation in the letter. In our view, this claim is doomed, however, because the letter explicitly accuses Miller Products of misappropriation; the application of Gray's "factors" leads only to a reasonable presumption concerning the manner in which Miller Products acquired the technology. Furthermore, the list of Gray's "extrinsic facts" is incomplete, given the indication in the record that an independent expert had access to the technology and was available to advise Miller Products on its operations.[1]

---

1. In response to a written interrogatory, Manufacturers Enameling listed various individuals and entities that had had access to the technology at issue in this case, including Pullman Industries, Daimler–Chrysler, Toledo Wire Products, and Talbert Consulting.

Pullman Industries also urges upon us cases that are clearly distinguishable from the situation here. In *Hoffman v. Roberto,* 85 B.R. 406 (W.D.Mich.1987), for example, the district court denied summary judgment to defendants on a defamation claim brought by the former president of a debtor trucking company against union leadership. The president alleged that the union leadership defamed him in a correspondence sent to union members of the trucking company. The district court found that certain statements in the correspondence that disparaged the company's operations and decisions were defamatory and untrue. *Id.* at 410–11. The court also concluded, relying upon Michigan law and the Restatement (Second) of Torts, that issues of material fact existed as to whether the statements referred to the president as an individual. *Id.* at 411–12. *Hoffman* is inapplicable to this case because the defamatory statements at issue referred specifically to the company's management, and thus necessarily included the company's president. The statements did not disparage any other entity and they warranted no other interpretation to the contrary.

Pullman Industries also looks to *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,* 164 F.3d 186 (3d Cir.1998), for support. In *Taj Mahal,* Delta sent letters to travelers stating that the Delta Airlines tickets they were tendering had been stolen. The court noted that although the defamatory statements did not mention who had stolen the tickets, the travelers could reasonably infer that their travel agent had done so since they purchased the tickets from the agent. As the court stated, the "imputation of fraud and dishonesty focuse[d] on the [travel] agency from whom the passenger[s] purchased the ticket." *Id.* at 190. Such an implication, however, does not necessarily follow in the case at bar. The allegations of misappropriation in the Mil-

ler Products letter do not embroil any entity except Miller Products, and Miller Products is the only party in the letter charged with a responsibility to alleviate Manufacturers Enameling's concerns. Hence, we conclude that *Taj Mahal* does not aid Pullman Industries in its argument.

Nor can Pullman Industries rely upon authority holding that defamation may result from statements directed at one entity that necessarily reflect improperly upon another. In a leading case of this sort, the D.C. Circuit addressed a company's contention that the named defendants had defamed it by connecting the company with organized crime. *See Croixland Properties Ltd. Partnership v. Corcoran,* 174 F.3d 213 (D.C.Cir.1999). Although the defendants had asserted that another company was the owner of a dog track that was tied to organized crime, the court concluded that recipients of the statements could reasonably infer that the defendants intended to refer to the plaintiff company, because the plaintiff actually owned the dog track. *Id.* at 217. The court relied upon the proposition of law that "[t]o satisfy the 'of and concerning' element, it suffices that the statements at issue lead the listener to conclude that the speaker is referring to the plaintiff *by description,* even if the plaintiff is never named or is misnamed." *Id.* at 216 (citations omitted) (emphasis added). Pullman Industries cannot rely upon the foregoing authority for support because the Miller Products letter does not refer to it "by definition" or "by description" in the statement couching the misappropriation charge.

■ Finally, given the analysis above, we cannot say that the district court abused its discretion in restricting discovery in this case. The additional information that the plaintiff purportedly sought

would not have had any effect upon the legal questions that compel the result.

## CONCLUSION

In summary, we conclude that the lack of any direct or indirect defamatory reference to Pullman Industries in the Miller Products letter defeats the plaintiff's defamation claim as a matter of law. We thus hold that the district court did not err in granting summary judgment to Manufacturers Enameling, and we affirm the judgment entered below.